## A01A0402. GOLDEN v. THE STATE.
### (551 SE2d 398)

PHIPPS, Judge.

A grand jury indicted Melissa Golden and her boyfriend, Michael Swanger,[1] for trafficking in amphetamine and possession of marijuana. Golden also was charged with obstruction of an officer. One attorney represented both defendants in a joint trial, at which the jury found both guilty as charged. In an amended extraordinary motion for new trial, Golden argued that the dual representation created a conflict of interest that rendered her counsel ineffective. The trial court found that she had waived such a claim and denied her motion. Golden appeals, maintaining that her Sixth Amendment

---

[1] Swanger is not a party to this appeal.

right to counsel was violated and that she did not waive that right. Because the record shows that Golden did waive any potential conflict of interest by proceeding with the same attorney as her codefendant, we affirm.

1. The material facts underlying the charges are not controverted. On August 6, 1998, Agents Bridgeman and Witmer of the Clayton County Drug Enforcement Task Force went to Golden's residence to investigate complaints of suspected drug activity. Golden answered the door and permitted the agents to step into the living room. When the agents identified themselves and asked to search the house for illegal substances, Golden refused. While standing in the living room, Bridgeman saw a partial marijuana cigarette on a candle holder in the room and arrested Golden for misdemeanor marijuana possession. Backup police officers arrived, and Bridgeman left to obtain a search warrant for the house. Golden attempted to flee, but Witmer apprehended her.

Moments later, Swanger and two other individuals arrived at the residence. Witmer ordered them to the ground. During a patdown search, Witmer found marijuana in Swanger's pocket and arrested him. When Bridgeman returned with a search warrant, a search of the house revealed more marijuana and over 400 grams of a substance that tested positive for amphetamine.

2. Golden contends that the trial court erred in denying her a new trial based on its finding that she waived any conflict of interest claim. She asserts that any waiver on her part was not knowing, intelligent, and voluntary. "In order to waive a right as fundamental as effective counsel, the trial court must, on the record, determine that the waiver is knowing, intelligent and voluntary. To meet this test, the trial court must be satisfied that the defendant is aware of the possibility of conflicts and the dangerous consequences which may result."[2]

Before trial, the State raised the possibility of a conflict of interest caused by the defendants being represented by the same attorney. And both Golden and Swanger confirmed to the court that they had discussed the case "at great length" with their retained attorney, that neither planned to testify during the trial, that they believed that they were best represented by that attorney, and that they waived any conflict with respect to the dual representation. The prosecutor then stated, "I would like to approach one of the defendants and offer them some sort of a negotiated settlement if they testify against the other one. . . ." When the court asked the defendants about that

---

[2] (Citations and punctuation omitted.) *Redd v. State*, 264 Ga. 399, 401 (444 SE2d 776) (1994).

offer, both defendants stated that they understood what the prosecutor was proposing then again stated that they wished to proceed to trial with their attorney. The trial court then asked whether they would testify at trial or remain silent. Golden and Swanger replied that neither would testify.

The record reveals that Golden understood her trial defense. According to her trial attorney, the defense was that "someone else left [the drugs] in the house." The attorney presented the testimony of the defendants' friend, who stated that on the evening before the arrests he had attended a "get-together" at the residence, that one of the guests carried a black duffel bag into the house, and that a guest (without indicating whether he was the same guest who brought the duffel bag) had "methamphetamines." Golden acknowledged this defense at the hearing on the extraordinary motion for new trial when the prosecutor asked her, "Did you understand that [the trial attorney's] defense during the trial was that neither — that you didn't own the drugs, correct?" Golden answered, "That's right, ma'am." The prosecutor then asked her, "And you understood that his defense was that Mr. Swanger did not own the drugs, correct?" Golden responded, "Correct." Also, at the hearing on motion for new trial, Golden admitted that she had been advised before trial that an independent attorney could be appointed for her if she could not afford one. Thus, the record demonstrates that with an understanding of their common defense, Golden elected to proceed to trial with the dual representation.

During the presentation of evidence by the defense, the trial court asked each defendant during a recess whether there was "anything you need to put on the record or any misunderstanding or anything you need to do?" Swanger replied, "Not on my behalf." The trial court then asked, "And what about Ms. Golden, is there anything you need to clear up about the case or how it's proceeding or anything, I'll give you opportunity to do so." Golden answered, "No, sir." The trial court again asked whether either defendant wished to testify, stating, "You just have to understand you have the right to testify if you wish but if you don't testify, I'll instruct the jury not to hold that against you. The law provides for that." Both defendants confirmed that they did not wish to testify.

At the close of evidence, Golden expressed concern about her "situation," the trial tactics, and her rights. When the judge asked her, "What rights are you referring to?" Golden replied, "All of them," making reference to the charges and the evidence. The judge then specifically inquired, "What kind of conflict do you contend exist[s] between you and your co-defendant . . . ?" Golden replied, "Several." The judge asked her what she wanted, and she asked for "somebody to advise me what all exactly my rights are and where I stand at."

The judge told Golden that she had "a hired attorney and that's what he's hired for" and then gave her time to speak with her attorney and Swanger. Afterward, Golden and Swanger told the trial court that they wanted to continue with the trial. The judge asked Golden, "If there's any conflict or you can't agree on, let me know and you don't wish to discharge your attorney anymore?" Golden responded, "No, sir." The court again asked, "You were able to resolve it?" Golden confirmed, "Yes, sir." The defense attorney followed up, "This is knowing and voluntary and intelligent and well thought out?" Golden replied, "Yes."

The trial court did not err in its finding that Golden effectively waived any claim to a conflict of interest as the record shows she was aware of the possibility of conflicts and dangerous consequences created by the dual representation. She understood that independent counsel could have been appointed for her, that she could have entered negotiations for a plea, and that she could have testified on her behalf and against Swanger. Aware of her defense, she confirmed to the court that she had discussed the case with their attorney, believed that she was best represented by him, and either had resolved or waived any conflict created by the dual representation. Golden's waiver is constitutionally sufficient.[3]

Finally, Golden's reliance on *Fleming v. State*[4] and *Tarwater v. State*[5] is misplaced. *Fleming* considered joint representation in death penalty cases.[6] And *Tarwater*, which specifically addressed joint representation in cases in which "counsel representing multiple defendants negotiates a plea bargain conditioned upon more than one pleading guilty,"[7] is factually distinguishable. Thus, neither case demands a result favorable to Golden.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

---

[3] See generally *United States v. Rodriguez*, 982 F2d 474 (11th Cir. 1993); compare *Redd*, supra, 264 Ga. at 401.

[4] 246 Ga. 90 (270 SE2d 185) (1980).

[5] 259 Ga. 516 (383 SE2d 883) (1989).

[6] *Fleming*, supra, 246 Ga. at 93 (1) (there cannot be joint representation where the State seeks the death penalty); *Zant v. Hill*, 262 Ga. 815, 816 (2) (425 SE2d 858) (1993) (limiting the *Fleming* automatic disqualification rule to "cases in which each of two or more defendants is charged with capital felonies arising out of the same criminal transaction or event").

[7] *Tarwater*, supra, 259 Ga. at 519 ("[a] showing that a defendant was allowed to plead guilty upon the condition that another defendant represented by the same attorney also pled guilty is a per se showing of ineffective assistance of counsel which rises to the level of an unconstitutional deprivation of the right to counsel").

Decided June 29, 2001.

*Glaze, Glaze, Harris & Arnold, Emmett J. Arnold IV*, for appellant.

*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.