## S04A0583. PEARSON v. THE STATE.
### (596 SE2d 582)

CARLEY, Justice.

A jury found Phillip Pearson guilty of malice murder but mentally ill, and it also returned guilty verdicts on an alternative felony murder count and on separate charges of aggravated assault and possession of a firearm during the commission of a felony. Concluding that the verdict on the felony murder count was vacated by operation of law and that the aggravated assault merged as a matter of fact into the malice murder, the trial court entered judgment of conviction for that offense and imposed a life sentence. As for the possession of a firearm charge, the trial court sentenced Pearson to a con-

secutive five-year term. After the denial of a motion for new trial, Pearson brings this appeal.[1]

1. There was a history of bad blood between Pearson and Rico Twine. According to Pearson, Twine stole his car and, on several occasions, assaulted him with a gun. Shortly after these alleged events, Twine was sitting in an automobile in the parking lot of Pearson's apartment complex. He did not pose any obvious threat to Pearson, and merely was waiting while his girlfriend went into her sister's apartment to retrieve some items. Pearson approached Twine, and shot him six times.

Pearson claimed that he acted in self-defense, but, at the time of the shooting, he was not in imminent danger from Twine. " ' "The doctrine of reasonable fear does not apply to any case of homicide where the danger apprehended is not urgent and pressing, or apparently so, at the time of the killing." ' [Cit.]" *Brown v. State*, 270 Ga. 601, 603 (2) (512 SE2d 260) (1999). The battered person syndrome is not applicable here, since Twine "was not a family member with a history of abusing [Pearson]. . . ." *Freeman v. State*, 269 Ga. 337, 339 (1) (496 SE2d 716) (1998). The jury was authorized to find that Pearson acted solely out of revenge for prior crimes and assaults allegedly committed against him by Twine. " '[T]he law will not justify a killing for deliberate revenge however grievous the past wrong may have been[.]' " *Teems v. State*, 256 Ga. 675, 676 (4) (352 SE2d 779) (1987). "[T]he defense of justification is not so broad as to permit a private citizen to mete out judgment as he sees fit. [Cit.]" *McPetrie v. State*, 263 Ga. App. 85, 87 (1) (587 SE2d 233) (2003). Accordingly, the evidence was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of Pearson's guilt of malice murder and possession of a firearm during the commission of that offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Brown v. State*, supra at 604 (4).

2. Although Pearson urges that the trial court erred in admitting hearsay testimony, the record shows that defendant did not make such an objection when the testimony was presented. Therefore, this enumeration does not present any issue for appellate review. *Brinson v. State*, 268 Ga. 227, 230 (7) (486 SE2d 830) (1997).

3. During closing argument, the assistant district attorney posed

---

[1] The crimes were committed on September 6, 2000. The grand jury indicted Pearson on December 5, 2000. The jury returned the guilty verdicts on May 3, 2002. The trial court entered judgments of conviction and imposed sentences on July 29, 2002. On August 5, 2003, the trial court granted a motion for leave to file an out-of-time motion for new trial and, on that same date, Pearson filed a motion for new trial. The trial court denied the motion for new trial on September 12, 2003. Pearson filed a notice of appeal on September 29, 2003. The case was docketed in this Court on December 9, 2003. The appeal was submitted for decision on February 2, 2004.

the following:

> Why didn't [Pearson] give the police the gun? Self-defense, why didn't he give the police the gun so they can complete their investigation? Where is that gun? There is a reason why. There is a reason why he didn't come up with that gun. . . . The trajectory of the bullets, the holes in the seat, the physical evidence supports malice, not self-defense. . . .

Defense counsel objected on the ground that this was an impermissible comment on the right to remain silent, and Pearson enumerates as error the failure to sustain this objection.

Counsel for the State is allowed to argue that the defendant has not rebutted the evidence of his guilt. *Thornton v. State*, 264 Ga. 563, 567 (4) (a) (449 SE2d 98) (1994). In his trial testimony, Pearson admitted that he fled the scene of the shooting, gave the weapon to his cousin, and that he never surrendered it to the authorities. There is no error "in permitting the State's attorney to comment on the absence of corroborating evidence in closing argument. [Cit.]" *Singleton v. State*, 240 Ga. App. 240, 241 (6) (522 SE2d 734) (1999). See also *Scott v. State*, 274 Ga. 476, 479 (4) (554 SE2d 488) (2001); *Lee v. State*, 265 Ga. 112, 114 (4) (454 SE2d 761) (1995); *Contreras v. State*, 242 Ga. 369, 372 (3) (249 SE2d 56) (1978). Thus, it was permissible for the prosecutor to argue the negative inferences arising from Pearson's admitted failure to produce the weapon which he claimed that he fired in self-defense. The argument was a valid attack on the credibility of Pearson's claim that the homicide was justified, not an impermissible comment on his constitutional right to remain silent.

4. The indictment contained a count alleging possession of a firearm by a convicted felon. Pursuant to *Head v. State*, 253 Ga. 429, 431 (3) (a) (322 SE2d 228) (1984), the trial court ordered a bifurcated proceeding, with the trial on that count to be conducted only after resolution of the other charges. Because the original verdict form made reference to the weapons offense, the trial court directed the assistant district attorney to redact the form before it was submitted to the jury. Despite this direction, the jury was presented with the original unedited verdict form containing the reference to Pearson's status as a felon. When this was discovered, Pearson moved for a mistrial, asserting that the State had introduced his character into issue. After determining that there was no prosecutorial misconduct, the trial court gave curative instructions. Nevertheless, Pearson urges that his motion for mistrial should have been granted.

Pearson did not renew his motion immediately after the trial court gave the curative instructions. See *McCoy v. State*, 273 Ga. 568, 572 (8) (544 SE2d 709) (2001). Instead, he delayed doing so until

after the jury returned the verdicts on the remaining counts. "'A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later. (Cits.)' [Cit.]" *Smith v. State*, 277 Ga. 213, 219 (16) (586 SE2d 639) (2003). Therefore, the failure to grant a mistrial was not preserved for appellate review.

Moreover, "[w]hether to grant a mistrial based upon improper character evidence rests within the trial court's discretion. [Cit.]" *Dukes v. State*, 273 Ga. 890, 892 (3) (b) (548 SE2d 328) (2001). The circumstances were such that, even if Pearson had renewed his motion in a timely fashion, curative instructions were a proper and adequate remedy for the inadvertent disclosure that he had a previous felony conviction. See *Dukes v. State*, supra at 893 (3) (b). See also *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997). Compare *King v. State*, 261 Ga. 534, 535 (2) (407 SE2d 733) (1991) (police officer testifying for prosecution ignored directive not to comment on defendant's character).

5. Pearson urges that his trial counsel was ineffective. To meet his burden of proof on that issue, he must show that the lawyer's performance was deficient and that a reasonable probability exists that, but for the deficient performance, the trial would have a different outcome. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) In her opening statement, the prosecuting attorney informed the jury that the State expected the evidence to show that Pearson "appointed himself as judge, jury, and executioner of Ricardo Twine when he decided to shoot him those six times in a dispute over a stolen van." The failure of defense counsel to object to this was not an instance of deficient performance, since counsel for the State is entitled to set forth what she expects the evidence will show. *Wilson v. State*, 276 Ga. 674, 676 (2) (581 SE2d 534) (2003). Viewed in context, the comment here was intended to illustrate the prosecution's contention that the evidence would show that Pearson was guilty of murdering the victim out of a malicious sense of revenge, rather than in self-defense. See *Jenkins v. State*, 269 Ga. 282, 292 (16) (498 SE2d 502) (1998).

(b) During closing argument, defense counsel did not object when the State's attorney commented on Pearson's dangerousness and stated that "[i]f he is not stopped, someone else will be next." Pearson correctly asserts that the failure to object to this statement constitutes deficient performance. *Mason v. State*, 274 Ga. 79, 80 (2) (c) (548 SE2d 298) (2001). However, there was no dispute that he intentionally shot Twine, and the question for the jury was simply whether his act constituted malice murder or justifiable homicide. Considering the overwhelming evidence that the victim did not con-

stitute an imminent threat to Pearson or anyone else at the time that he was ambushed and shot six times, there clearly is no reasonable probability that the failure to object to this portion of the closing argument had any effect on the verdict. *Mason v. State*, supra at 81 (2) (c).

(c) During the State's closing argument, the prosecuting attorney questioned whether someone who acted in self-defense would run away, and she continued with the following:

> If you've got a good story, if you've got a good reason for doing something, what do you want to do? You want the police to know your side of the story. You want the police to know you were defending yourself. You are going to be right there. . . . You are not going to wait until you come into a courtroom and start talking about self-defense. You are going [to] talk about it on the day that it happens.

Pearson urges that, by failing to object to this argument, his trial attorney performed deficiently.

The State may offer evidence of the defendant's flight from the scene, and argue that it is circumstantial evidence of his guilt. *Renner v. State*, 260 Ga. 515, 517-518 (3) (b) (397 SE2d 683) (1990). However, a prosecutor may not comment on an accused's pre-arrest silence or failure to come forward voluntarily, even if he chooses to testify at trial. *Landers v. State*, 270 Ga. 189, 190 (2) (508 SE2d 637) (1998). Thus, even though Pearson testified in his own defense, the assistant district attorney should not have included in her argument a reference to his pre-trial failure to raise the defense of justification. See *Mallory v. State*, 261 Ga. 625, 629 (5) (409 SE2d 839) (1991).

However, trial counsel's failure to object to the unauthorized argument does not require a reversal of Pearson's convictions. "As for the prejudice prong of [his] ineffectiveness claim, we note that an improper comment on a defendant's silence may be harmless error, where, as here, there is overwhelming evidence of guilt. [Cits.]" *Rickman v. State*, 277 Ga. 277, 281 (4), n. 17 (587 SE2d 596) (2003). If the comment itself would not constitute harmful error under the circumstances, then there is no reasonable probability that the trial lawyer's failure to object to it affected the outcome of the case. Therefore, Pearson has not made the requisite showing of prejudice resulting from defense counsel's acquiescence in the impermissible comment on the right to remain silent.

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 3, 2004.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Raina Nadler, Assistant Attorney General*, for appellee.